**TRT/FTC COMMUNICATIONS, INC. f/k/a TRT Telecommunications, Inc., Plaintiff,**

v.

**INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, Defendant.**

Civ. A. No. 91–30–JJF.

United States District Court, D. Delaware.

April 1, 1993.

Allen M. Terrell, Jr. and Frederick L. Cottrell, III, of Richards Layton & Finger, Wilmington, DE, Joel A. Mullin, of Stoel Rives Boley Jones & Grey, Portland, OR, for plaintiff.

Frederick W. Iobst, and Josy W. Ingersoll, of Young Conaway Stargatt & Taylor, Wilmington, DE, Irving L. Halpern, of Cummins & White, Los Angeles, CA, for defendant.

### MEMORANDUM OPINION

FARNAN, District Judge.

This matter was tried to the Court on the issue of liability only. After the conclusion of trial, the parties submitted their Proposed Findings of Fact and Conclusions of Law with Argument. This Memorandum Opinion shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to the Civil Rules of Procedure.

### FINDINGS OF FACT

Plaintiff TRT/FTC Communications, Inc. ("TRT") is a Delaware corporation with its principal place of business in Washington, DC. TRT is engaged in the international telecommunications business and operated a business in Panama City, Panama. The business of TRT involved the retail sales of personal computers, facsimile machines and telephone systems.

Defendant, the Insurance Company of the State of Pennsylvania ("the Pennsylvania Insurance Company"), is a Pennsylvania corporation with its principal place of business in the State of New York. TRT brought this lawsuit against the Pennsylvania Insurance

Company to recover a loss which TRT suffered in Panama in 1989.

TRT was a named insured in Policy No. IF 7522405 ("the Insurance Policy") issued by the Pennsylvania Insurance Company to Pacific Telecom, the parent corporation of TRT. There is no dispute that the Insurance Policy was in effect in December 1989 and purported to cover the operations of TRT in Panama.

On December 15, 1989, the Panamanian National Assembly passed a declaration that proclaimed a state of war existed between the United States of America and the Republic of Panama. On December 20, 1989, military forces of the United States invaded Panama, specifically Panama City, as part of "Operation Just Cause." "Operation Just Cause" was an offensive military movement by the United States which initiated military hostilities between the United States and Panama that lasted from approximately 1:00 a.m. on December 20, 1989, on and off through December 21, 1989. During the period of the hostilities, civil disorder reigned in the central business district of Panama City. TRT occupied a portion of the ground floor of a building known as Banco Union which was located in the Panama City business district.

During the morning hours of December 21, 1989, approximately eight persons dressed as civilians, but carrying AK–47 military assault rifles, broke into the TRT ground floor sales facility and ordered the TRT sales manager to leave the building. The armed men then stole merchandise and equipment from the TRT showroom and offices by loading it into a truck. The men were well-armed and operated in an organized fashion and it is likely that their raid on the TRT facility was planned. Ironically, TRT was able to purchase back some of the stolen equipment from allegedly unknown persons after the hostilities ceased.

TRT's insurance broker, Marsh & McLennan, reported the loss to the Pennsylvania Insurance Company on December 28, 1989.

The loss claim was initially denied by Ralph Carlson, Manager of American International Underwriters' ("AIU"), San Francisco Claims Department, on January 4, 1990. AIU is the parent of the Pennsylvania Insurance Company.

On April 21, 1990, Marsh & McLennan, on behalf of TRT, filed a formal claim of loss with AIU by way of a "Sworn Statement in Proof of Loss." In the statement, TRT claimed a total loss in the amount of $332,-046.26.

By letter dated May 7, 1990, Mr. Carlson formally denied the TRT claim citing Clause 12(O) of the Manuscript of the Policy.[1] In its September 30, 1991 Amended Answer, the Pennsylvania Insurance Company relied on three war exclusion clauses with regard to its response to TRT's claim. Specifically, the Pennsylvania Insurance Company relies on: (1) the war exclusion in the Policy Jacket; (2) the war exclusion Clause 12(O) in the Manuscript; and (3) the war exclusion in the Riot and Strike Endorsement.

## *ISSUE*

The dispositive issue in this case centers on whether the loss claimed by TRT is excluded under the provisions of any or all of the above referenced "war exclusions." In resolving this issue, the Court must interpret the language of the Insurance Policy's war exclusions to determine if any of the exclusions are applicable to the conditions that existed in Panama on December 21, 1989.

## *CONCLUSIONS OF LAW*

1. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 by reason of the diversity of citizenship between the parties and the amount in controversy.

2. By agreement of the parties, the law of California or Washington is applicable to the legal issues presented.

---

1. The Policy consists of a 2–page printed form, a 13–page manuscript that relates to doing business in Chile, and an 18–page manuscript that pertains to business operations in Panama and several other countries. It is the 18–page Panamanian Manuscript that is referenced above as the "Manuscript."

3. The Policy is an "all risks" insurance policy insuring TRT against all risks of direct physical loss or damage to property in Panama, unless a risk is excluded from coverage by a specific exclusion provision.

4. The Court concludes the language of Clause 12(O) is clear and unambiguous.

The war exclusion in the Manuscript, Clause 12(O), provides:

"THIS POLICY DOES NOT INSURE AGAINST LOSS OR DAMAGE CAUSED BY OR RESULTING FROM:

\*　\*　\*　\*　\*　\*

"O) 1) HOSTILE OR WARLIKE ACTION IN TIME OF PEACE OR WAR, INCLUDING ACTION IN HINDERING, COMBATING, OR DEFENDING AGAINST AN ACTUAL, IMPENDING OR EXPECTED ATTACK, (A) BY ANY GOVERNMENT OR SOVEREIGN POWER (DE JURE OR DE FACTO), OR BY ANY AUTHORITY MAINTAINING OR USING MILITARY, NAVAL OR AIR FORCES; OR (B) BY MILITARY, NAVAL OR AIR FORCES; OR (C) BY AN AGENT OF ANY SUCH GOVERNMENT, POWER, AUTHORITY OR FORCES;

"2) ANY WEAPON OF WAR EMPLOYING ATOMIC FISSION OR RADIOACTIVE FORCE WHETHER IN TIME OF PEACE OR WAR;

"3) INSURRECTION, REBELLION, REVOLUTION, CIVIL WAR, USURPED POWER, ACTS OF TERRORISM, SABOTAGE, OR ACTION TAKEN BY GOVERNMENTAL AUTHORITY IN HINDERING, COMBATING OR DEFENDING AGAINST SUCH AN OCCURRENCE, SEIZURE OR DESTRUCTION UNDER QUARANTINE OR CUSTOMS REGULATIONS, CONFISCATION BY ORDER OF ANY GOVERNMENT OR PUBLIC AUTHORITY, OR RISKS OF CONTRABAND OR ILLEGAL TRANSPORTATION OR TRADE;"

5. The Court concludes that the Defendant has proved by a preponderance of the evidence that the loss incurred by TRT in Panama City, Panama, on December 21, 1989, was a peril specifically excluded by the provisions of the above referenced War Exclusion Clause 12(O). Further, the Court concludes the sole cause of the TRT loss was the war hostilities occurring in Panama City on December 21, 1989.

Beginning on December 15, 1989, Panama, by virtue of its authorized governing body declaring war on the United States, became a nation at war. Although hostile action had not commenced against the United States, Panama's declared enemy, the country of Panama and its military and para-military organizations were in a war preparedness status. Actual combat in the war began on December 20, 1989, when the United States' invasion of Panama took place. The combat continued through December 21, 1989.

The Court believes that on the record before it, the eight men who robbed the TRT facility in Panama City on December 21, 1989, were part of some arm of the Panamanian government's forces involved in the war effort. However, regardless of whether the men were part of the Panamanian forces or a band of looters, there is ample evidence to support the conclusion that their actions against TRT were enabled by the military hostilities occurring between Panama and the United States. The Court is persuaded that absent the declared war and the invasion of Panama by forces of the United States, TRT's loss, under the circumstances established by both parties at trial, would not have occurred.

### CONCLUSION

For the reasons discussed, the Court concludes that the loss suffered by the Plaintiff, TRT, in Panama City, Panama, on December 21, 1989, was excluded under Clause 12(O) of the subject Insurance Policy.